UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGEL CARRASQUILLO,

                    Petitioner,              **DECISION AND ORDER**
                                             **No. 10-CV-0197T**

        -vs-

HAROLD GRAHAM,
SUPERINTENDENT

                    Respondent.

_____

## I.   Introduction

*Pro se* Petitioner Angel Carrasquillo("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered June 23, 2004, in New York State, Supreme Court, Monroe County (Hon. Stephen R. Sirkin), convicting him, after a jury trial, of Murder in the First Degree (Penal Law § 125.27 [1][a]), two counts of Murder in the Second Degree (Penal Law § 125.25 [1], [3]), two counts of Robbery in the First Degree (Penal Law § 160.15 [4]), and Attempted Murder in the Second Degree (Penal Law §§ 110.00, 125.25 [1]).  Petitioner was sentenced to an aggregate term of imprisonment of life without parole.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

The charges arise from an incident that occurred on December 30, 2002, in the driveway of 23 Avenue C in the City of Rochester, wherein eighteen-year-old Petitioner killed Roshawn Marble ("Marble") and injured Orado Graham ("Graham") in the course of a robbery.

On the date of the incident, at approximately 8:40 p.m., Marble was talking with his friend, Graham, outside 23 Avenue C when Petitioner and a group of men approached carrying guns.  Trial Trans. [T.T.] 223-225, 237-238, 279, 311-314.  Petitioner walked up to Marble, pointed a gun at him, forced him back up the driveway, and stated, "[y]ou know the routine so do it."  T.T. 238, 315. Marble complied, and positioned himself face-down on his stomach in the driveway while Petitioner and several other men searched Marble's pockets.  T.T. 241, 336.  Graham could see the men taking Marble's money and other items from his pockets.  T.T. 242, 336. As Marble was being robbed on the ground, several of the other men in the group focused their attention on Graham.  One held a gun to the back of Graham's neck and another held a gun to his side.  T.T. 243.  The men searched Graham's pockets, removing his wallet, cash, social security card and other personal identification.  T.T. 242-243, 335-336.  At some point shortly thereafter, Petitioner directed his attention away from Marble and to Graham.  T.T. 244. Petitioner stated, "[t]ell him to shut the F up" and took a swing

at Graham, but missed.  T.T. 244.  Petitioner then turned back to Marble, who was on the ground pleading with Petitioner not to rob him.  T.T. 244-245.  Graham then heard gunshots and turned to see Petitioner firing at Marble.  T.T. 247-248, 254.  Graham tried to escape while Petitioner fired at Marble, but Petitioner then turned the gun on Graham.  T.T. 248, 337-338.  Petitioner shot Graham in the back as he tried to run away.  T.T. 248, 338-339.

Sergeant Mark Mariano of the Rochester Police Department ("RPD") was one block away from 23 Avenue C when he received the dispatch for a person shot at that address.  T.T. 166-167.  Upon arrival, he saw Graham standing near the sidewalk with blood on his shirt.  T.T. 167.  Graham lifted his shirt for Sgt. Mariano, exposing a gunshot wound.  T.T. 168.  Sgt. Mariano then observed Marble lying motionless in the driveway.  T.T. 167-168. Sgt. Mariano checked for Marble's pulse, but Marble was, in his opinion, already dead.  T.T. 168.  Sgt. Mariano observed shell casings and a projectile in the driveway near Marble's body.  T.T. 178.

Graham was treated at the scene and transported to Rochester General Hospital by ambulance.  T.T. 260.  On January 9, 2003, Graham underwent surgery to have the bullet removed from his back. T.T. 576-577.

Marble died as a result of his injuries.  T.T. 551.  An autopsy revealed that the bullet had entered through the right side

of Marble's back, passed through both of his lungs and his heart, and exited through the left side of Marble's chest.  T.T. 548-549.

Officer Dominick Perrone of the RPD's Technician Unit processed the crime scene the night of December 30, 2002.  T.T. 590-592.  He collected three spent .380 caliber cartridge casings and one fired projectile from the driveway at 23 Avenue C.  T.T. 591-592.  John Clark, a Firearms Examiner for the Monroe County Public Safety Laboratory, examined the three .380 caliber cartridge cases and two .380 caliber bullets recovered from the crime scene.  T.T. 361.  He determined that each of the items had all been fired from the same firearm.  T.T. 365-368.

On April 23, 2003, Petitioner was convicted of Criminal Possession of a Weapon in the Third Degree, in an unrelated matter, and sentenced to serve a one-year term of imprisonment.  Hearing Mins. [H.M.] 70-71.  On June 14, 2003, while serving this sentence in the Monroe County jail, Petitioner had a conversation with inmate Jose Benitez ("Benitez" or "the informant"), who was acting as a confidential informant for the police.  During his conversation with Benitez, Petitioner confessed that he had shot and killed someone during the course of a robbery on Avenue C in December of 2002.  H.M. 70-71;  T.T. 484-488;  see also Resp't App. A at 16-40, 144-147.  Benitz was wired and his conversation was recorded.  T.T. 486.

On June 20, 2003, Investigator Randy Benjamin ("Investigator Benjamin") of the RPD went to the Monroe County jail to interview Petitioner about the instant crimes.  H.M. 50-55.  Investigator Benjamin advised Petitioner of his <u>Miranda</u> rights, Petitioner indicated that he understood his rights, and waived them.  H.M. 55-59.  Petitioner denied any involvement in the homicide/robbery at 23 Avenue C and provided only pedigree information, including his date of birth.  H.M. 55; T.T. 618-619.  When Investigator Benjamin informed Petitioner that his name had surfaced in connection with the murder of Marble and that he had been fingered as the shooter, Petitioner requested an attorney and Investigator Benjamin terminated the interview.  <u>See</u> Resp't App. A at 41.

Prior to trial, Petitioner moved to suppress, *inter alia*, the statements he made to Benitez and to Investigator Benjamin.  <u>See</u> Resp't App. A at 144.  After conducting a <u>Huntley</u> hearing, the county court denied Petitioner's motion to suppress his statements. With respect to Petitioner's statements to Benitez, the suppression court determined that said statements were not obtained in violation of Petitioner's right to counsel because his right to counsel had not yet attached.  <u>See</u> Resp't App. A at 150-151.  With respect to Petitioner's statements to Investigator Benjamin, the suppression court determined that: Petitioner voluntarily waived his <u>Miranda</u> rights and initially agreed to speak without an attorney;  that when Petitioner requested an attorney, the police

ceased speaking with him; and that Petitioner's statements were not coerced.  See Resp't App. A at 151-152.

At the close of his jury trial, Petitioner was found guilty of first degree murder, two counts of second degree murder, two counts of first degree robbery, and second degree attempted murder.  T.T. 694.  He was sentenced to life without parole for the first degree murder conviction, twenty-five years to life for both counts of second degree murder, twenty-five years for both counts of first degree robbery, and twenty-five years for attempted second degree murder.  Sentencing Mins. [S.M.] 12-13.  The three murder and two robbery sentences were set to run concurrently with each other but consecutively with the attempted murder sentence.  S.M. 13.

On April 25, 2008, the Appellate Division, Fourth Department unanimously affirmed Petitioner's conviction, and leave to appeal was denied.  People v. Carrasquillo, 50 A.D.3d 1547 (4th Dep't 2008); lv. denied, 11 N.Y.3d 735 (2008).

On or about March 27, 2009, Petitioner filed an application for a writ of error coram nobis in the Appellate Division, Fourth Department, which was summarily denied.  People v. Carrasquillo, 63 A.D.3d 1670 (4th Dep't 2009).  Leave to appeal was denied.  People v. Carrasquillo, 13 N.Y.3d 742 (2009).

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel;

(3) the trial court improperly denied his motion to suppress his statements to Benitez; and (4) the trial court improperly denied his motion to suppress his statement to Investigator Benjamin. See Pet. ¶12, Grounds One-Four (Dkt. No. 1);  Reply (Dkt. No. 11). Petitioner's claims are exhausted and properly before this Court.

## III. General Principles Applicable to Habeas Review

### A.   The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not

*dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing

the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003).  A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

### B.   Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A);  <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999);  <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995).  "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (<em>en banc</em>), <u>cert. denied</u>, 464 U.S. 1048 (1984).

## IV.  Petitioner's Claims

## 1.   Ineffective Assistance of Trial Counsel

Petitioner contends, as he did on direct appeal, that he was deprived of his right to effective assistance of counsel. Specifically, he alleges that:  (1) counsel failed to raise factual allegations to support a claim that his right to counsel attached

before he made statements to the informant; (2) counsel failed to request submission to the jury of the issue of the voluntariness of his statements to the informant; and (3) the trial court failed to give trial counsel adequate time to prepare a defense. See Pet. ¶12, Ground One; Reply, Points One-Two. The Appellate Division, Fourth Department rejected this claim on the merits. See Carrasquillo, 50 A.D.3d at 1548. As discussed below, this claim is meritless.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the

facts of the particular case, viewed as of the time of counsel's conduct." Id.

First, Petitioner contends that he received ineffective assistance of counsel because counsel failed to raise factual allegations to support a claim that his right to counsel attached before he made statements to the informant. See Pet. ¶12, Ground One at 6(i)-6(ii). As discussed above, the suppression court, after conducting a pre-trial hearing on this matter, concluded that Petitioner's statement to Benitez was not obtained in violation of Petitioner's right to counsel because his right to counsel had not yet attached. See Resp't App. A at 150-151. This conclusion was based upon the following facts that were established at the pre-trial hearing: that, on June 14, 2003, while in jail on an unrelated conviction, Petitioner had a conversation with Benitez, who was acting as a confidential informant; that, during that conversation, Petitioner made incriminating statements about the instant homicide/robbery; and that Petitioner was not represented by counsel at that time and had not been questioned about or charged with the instant crimes. See Resp't App. C at 146. Trial counsel could not have raised allegations of fact that did not exist, and counsel cannot therefore be faulted for failing to do so.

Next, Petitioner contends that he received ineffective assistance of counsel based on counsel's failure to request the

issue of the voluntariness of Petitioner's statements to Benitez be submitted to the jury.  See Pet. ¶12, Ground One at 6(i)-6(ii).  A review of the record reveals that the evidence adduced at trial did not support a request for the voluntariness charge.   To this extent, counsel cannot be faulted for failing to make a request on that basis.   Moreover, Petitioner has failed to demonstrate that counsel's failure to pursue the voluntariness issue was anything other than a strategic decision.  The record reflects that counsel argued that the tape of the conversation between Petitioner and the informant was "irrelevant" because it was in Spanish and the English translation was not necessarily reliable.   T.T. 641. Counsel argued further that the admissions in the translations did not match the other evidence of the crime, and therefore, failed to link Petitioner to the crime.  T.T. 641-642.  This approach to the taped conversation would have, as Respondent correctly points out, been undercut or diluted by a claim (especially with no facts to support it) that Petitioner was coerced into making the admissions to Benitez.  See Resp't Mem. of Law 8-9.  Accordingly, it was not unreasonable for counsel to forego seeking submission of the issue of voluntariness of Petitioner's statements to Benitez to the jury.

Finally, Petitioner argues that he received ineffective assistance of counsel because "the trial court failed to give trial counsel adequate time to prepare a defense."  See Pet. ¶12, Ground One at 6(i)-6(ii).  The record reflects that, based upon what he

perceived as disclosure violations under state and federal law that prevented him from adequately preparing a defense, trial counsel requested an adjournment in the middle of the trial.   T.T. 387, 389.   Trial counsel's request was denied by the trial court and the trial proceeded.   The trial court's denial of counsel's request for an adjournment does not render his counsel's assistance ineffective.

In sum, Petitioner has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness. Moreover, he has also failed to demonstrate that, but for counsel's alleged errors, there is a reasonable probability that the outcome of his trial would have been different.   The evidence of Petitioner's guilt was overwhelming: he was identified as the shooter by the surviving victim (Graham) and he was recorded giving an admission of his involvement in the crimes charged to an informant.   See Strickland, 466 U.S. at 693 (even serious errors by defense counsel do not warrant granting federal habeas relief where the conviction is supported by overwhelming evidence of guilt).

Accordingly, the state court's determination of this claim was neither contrary to nor an unreasonable application of settled Supreme Court law.   Petitioner's ineffective assistance of trial counsel claim is therefore dismissed in its entirety.

2.   **Ineffective Assistance of Appellate Counsel**

Petitioner contends that he received ineffective assistance of appellate counsel based upon counsel's decision to raise three weak suppression issues on direct appeal, while foregoing raising an allegedly meritorious <u>Batson</u> claim.[1]   <u>See</u> Pet. ¶12, Ground Two; Reply, Points Three-Four.   Petitioner raised this claim in his coram nobis application, which was summarily denied by the Fourth Department.   <u>See</u> <u>Carrasquillo</u>, 63 A.D.3d at 1670;   <u>see</u> <u>Sellan v. Kuhlman</u>, 261 F.3d 303 (2nd Cir. 2001) (holding that a summary denial constitutes an adjudication on the merits).   As discussed below, this claim is meritless.

It is well established in both civil and criminal law that while conducting voir dire, an attorney may not use peremptory challenges in a manner that would discriminate against otherwise unbiased prospective jurors based solely on their race.   <u>Powers v. Ohio</u>, 499 U.S. 400 (1991) (citing <u>Batson v. Kentucky</u>, 476 U.S. 79, 84 (1986)).   Every defendant has a right "to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." <u>Batson</u>, 476 U.S. at 85-86 (citing <u>Martin v. Texas</u>, 200 U.S. 316,

---

[1]      At the outset, the Court points out that this claim appears to be at odds with Petitioner's other habeas claims, particularly ground three of the petition in which Petitioner seeks relief on the basis that the trial court improperly denied his motion to suppress his statements to Benitez (see section IV, 3 below).   In support of his ineffective assistance of appellate counsel claim, Petitioner asserts that it was unreasonable for appellate counsel to raise a suppression issue with respect to his statements to Benitez because the suppression court correctly decided this issue.   <u>See</u> Reply at 6. The Court further notes that, in his Reply, Petitioner acknowledges the conflicting nature of these arguments (<u>see</u> Reply at 6-7).

-14-

321 (1906)).  In <u>Batson</u>, the Supreme Court established a three-step process for evaluating claims that a prosecutor used peremptory challenges in a racially discriminatory manner.  See <u>Batson</u>, 476 U.S. at 96-98.

> First, the defendant must establish a prima facie case of discrimination. Second, the prosecutor must offer an explanation for the strike that is, on its face, race-neutral. Third, the trial court must determine whether the defendant has carried her burden of proving that the government's proffered reason was pretextual, and that the strike was indeed motivated by purposeful discrimination.

<u>Id.</u> (citing <u>United States v. Brown</u>, 352 F.3d 654, 660 (2d. Cir. 2003)).

Here, the record reflects that trial counsel first raised a <u>Batson</u> challenge when the prosecutor used a peremptory challenge on one of two black female prospective jurors.  T.T. 83-84.  The trial court denied that challenge on the ground that defense had not established a pattern.  T.T. 83.  Subsequently, the prosecutor used peremptory challenges on two of the next three black female prospective jurors (jurors 15, 20 and 21), and trial counsel then raised a <u>Batson</u> challenge.  T.T. 83-84.  At that point, the trial court did not explicitly rule on whether the exercise of the peremptory challenges on three out of the five black female prospective jurors established a pattern, but instead proceeded to ask the prosecutor his reason for the peremptory challenges.  T.T. 84.  The prosecutor explained that he had challenged prospective

juror 15 because she had visited a correctional institution and said she was familiar with people "who were afraid to come to court and that's what usually happens, words to that effect." T.T. 84-85, 62. The prosecutor further stated that he challenged prospective juror 20 because she visited a correctional institution and had a nephew who was a police officer. Finally, he explained that he challenged prospective juror 21 because she knew someone who was "framed for a DWI." T.T. 85, 31. The court then determined that "[b]ased upon those reasons, [it would] allow 21 but . . . disallow 15 and 20." T.T. 85-86.

Petitioner does not challenge the first two steps of the Batson inquiry. See Pet. ¶12, Ground Two at 7(ii). Rather, he contends that "that the trial court did not perform the final step in the Batson procedure in that it did not invite argument, and made no finding, as to whether the reasons offered by the prosecutor, although facially neutral, were pretextual and not the genuine reason for the challenges." Id. This contention is meritless. Contrary to Petitioner's contention, the trial court clearly ruled on whether the prosecution's justifications were pretextual. With respect to Petitioner's Batson challenges to jurors 15, 20 and 21, the trial court heard the prosecution's explanations for the peremptory strikes. After this exchange, the trial court judge stated, "[b]ased upon those reasons, I'll allow 21 but I'm going to disallow 15 and 20." T.T. 86. While the court

-16-

did not explain its reasoning for each of its credibility determinations, it had no requirement to do so under established Supreme Court law. See McKinney v. Artuz, 326 F.3d 87, 99 (2d Cir. 2003) ("We note that the court made clear its reasoning for this decision, although we are aware of no controlling Supreme Court precedent that required it to do so."); see e.g., Messiah v. Duncan, 99 Civ. 12178 (RCC) (HBP), 2004 U.S. Dist. LEXIS 17271, *11 (S.D.N.Y. Aug. 27, 2004) ("The trial court dismissed Petitioner's claim of pretext when it directed defense counsel to 'stop that nonsense.' Although an explicit factual determination by the trial judge would have established a clearer record, this Court does not find that such an explicit determination is required."); Moxley v. Bennett, 291 F.Supp.2d 212, 228 (W.D.N.Y. 2003) ("While the trial court's consideration of the third element of the Batson test was performed in fairly summary fashion, the court finds taken as a whole upon this record it was sufficient to meet the Batson requirement.") (Report and Recommendation adopted, 291 F.Supp.2d 212). Here, the Court finds that the trial court judge's statement that "[b]ased upon those reasons, I'll allow 21 but I'm going to disallow 15 and 20" was sufficient to meet the third requirement of the Batson inquiry, despite his failure to provide express reasons for his factual determinations.

Accordingly, a Batson claim would likely not have succeeded on direct appeal, and appellate counsel cannot therefore be faulted

for not raising such a claim.  Moreover, Petitioner cannot show that, but for appellate counsel's decision to forego raising the Batson claim while pursuing three suppression issues, there is a reasonable probability that the outcome of his appeal would have been different.  Thus, the state court's determination of this claim did not contravene or unreasonably apply settled Supreme Court law.  The claim is dismissed in its entirety.

### 3.  The Trial Court Improperly Denied Petitioner's Motion to Suppress his Statements to the Informant

Petitioner argues, as he did on direct appeal, that the trial court improperly denied his motion to suppress his statement to Benitez.  See Pet. ¶12, Ground Three.  In support of this claim, Petitioner asserts that: "[the] Supreme Court should not have admitted Petitioner's statement into evidence.  Informant Jose Benitez was acting as an agent of law enforcement when he taped conversation with Petitioner."  Id. at 9(i).  The Appellate Division, Fourth Department rejected this claim on the merits.  See Carrasquillo, 50 A.D.3d at 1548.  This claim is meritless.

The Supreme Court has stated that "Miranda forbids coercion, not mere strategic deception by taking advantage of a suspect's misplaced trust" in another.  Illinois v. Perkins, 496 U.S. 292, 297 (1990), accord United States v. Holmes, 44 F.3d 1150 (2d Cir. 1995) (relying on Illinois v. Perkins in rejecting defendant's challenge to government's use of a third-party to tape record incriminating conversations).  "Strategic deception" includes

"[p]loys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion . . . are not within <u>Miranda</u>'s concerns." <u>Perkins</u>, 496 U.S. at 297. Here, Petitioner voluntarily spoke with Benitez while Petitioner was in the Monroe County jail on an unrelated matter, no charges in the instant case were pending against him, and he was not represented by counsel at that time. There is no evidence before this Court that Benitez coerced or threatened Petitioner during their conversation. Thus, the taped oral statement was not obtained in violation of Petitioner's Fifth Amendment privilege against self incrimination.

Accordingly, the state court's refusal to suppress Petitioner's statement to Benitez, and the appellate court's affirmance thereof, did not contravene or unreasonably apply settled Supreme Court law. The claim is therefore dismissed in its entirety.

**4.   The Trial Court Improperly Denied Petitioner's Motion to Suppress his Statements to Investigator Benjamin**

Petitioner contends, as he did on direct appeal, that the trial court improperly denied his motion to suppress his statements to Investigator Benjamin. <u>See</u> Pet. ¶12, Ground Four. The Appellate Division, Fourth Department rejected this claim on the merits. <u>See</u> <u>Carrasquillo</u>, 50 A.D.3d at 1548. As discussed below, this claim is meritless.

Here, even *assuming arguendo* that Petitioner's statements to Investigator Benjamin should have been suppressed -- a finding this Court does not make -- Petitioner still cannot prevail on this claim.  In order to obtain relief on habeas corpus, a petitioner must demonstrate that the relevant error "had a substantial and injurious effect or influence in determining the jury's verdict."  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (under the harmless error standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice) (internal quotations and citations omitted).  Petitioner cannot meet this burden.

The record reflects that Petitioner's statement to Investigator Benjamin was never offered in evidence by the People. To this extent, his statements could not have bore directly on the People's proof against him, and Petitioner cannot therefore establish that his statements had a substantial and injurious effect on the jury's verdict.  Thus, any error in admitting the statements was harmless and does not entitle petitioner to habeas relief.

Accordingly, the state court's determination of this claim did not contravene or unreasonably apply settled Supreme Court law. The claim is therefore dismissed in its entirety.

**V.    Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed.  Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.  See, e.g., <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.  Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    July 26, 2011
          Rochester, New York